1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| **GUSTAVO PEREGRINA,** | **Case No. 1:11-cv-02139 LJO MJS (HC)** |
| Petitioner, | **FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |
| **v.** | |
| **WILLIAM KNIPP, Warden,** | |
| Respondent. | |

17
18
            Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas
19  corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Tami M. Krenzin of
20  the office of the California Attorney General.

21  **I.      PROCEDURAL BACKGROUND**

22          Petitioner is currently in the custody of the California Department of Corrections
23  pursuant to a judgment of the Superior Court of California, County of Stanislaus,
24  following his conviction by jury trial on June 4, 2009, for aggravated sexual assault of a
25  child and continuous sexual abuse of a child. (Clerk's Tr. at 147-150.)  On September 8,
26  2009, Petitioner was sentenced to an indeterminate term of twenty-one (21) years to life
27  in prison. (Id.)

28          Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

1

District, on July 7, 2010. (Lodged Doc. 2.) On April 19, 2011, the appellate court affirmed the conviction for aggravated sexual assault of a child, but reversed the conviction for continuous sexual abuse of a child. (Lodged Doc. 1.) Petitioner's petition for review was summarily denied by the California Supreme Court on July 13, 2011. (Lodged Docs. 5-6.)

After direct review, Petitioner pursued post-conviction relief in the form of petitions for writ of habeas corpus. On December 27, 2011, Petitioner filed a petition for writ of habeas corpus with the Stanislaus County Superior Court. (Lodged Doc. 7.) It was denied in a reasoned decision on February 16, 2012. (Id.) On April 25, 2012, Petitioner filed a petition for writ of habeas corpus with the Fifth District Court of Appeal. (Lodged Doc. 8.) The petition was denied on June 6, 2012. (Id.) On July 26, 2012, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court. (Lodged Doc. 9.) The petition was denied on November 14, 2012. (Id.)

Petitioner filed his federal habeas petition on December 19, 2011. (Pet., ECF No. On December 7, 2012, Petitioner filed a first amended petition. (Am. Pet., ECF No. 13.) The petition raised four grounds for relief: 1) the trial court violated his constitutional right to an impartial jury by not dismissing the jury panel after excusing two prospective jurors for cause; 2) the trial court did not properly instruct the jury regarding lesser included offenses violating his due process; 3) Petitioner's counsel was ineffective during both trial and appeal; and 4) that the state court judge failed to recuse himself.

Respondent filed an answer to the petition on June 27, 2013. (Answer, ECF No. 23.) Petitioner did not file a traverse to the answer.

## II. **STATEMENT OF THE FACTS**[1]

Appellant and L. A. (hereafter mother) were married in 1996. Mother had a daughter, Jane Doe, from a prior relationship. Jane was born in August 1994. She was about a year and one-half when appellant and mother married. After they married, appellant and mother had three

---

[1] The Fifth District Court of Appeal's summary of the facts in its April 19, 2011 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

children together, two girls and a boy, who were twelve, four and two years old at the time of trial in May and June 2009. At the time of trial, Jane was approximately two months shy of her 15th birthday, having just completed the 9th grade.

*GMC Blazer Incident*

At about the time of her 8th grade graduation, when Jane was 13 years old, she was traveling with appellant and her three-year-old brother in a GMC Blazer returning from Modesto to their home in Oakdale. Jane was riding in the front passenger seat. Her brother was riding in the back seat and was asleep. Appellant asked Jane whether she had ever kissed someone on the mouth and when she replied that she had not done so, appellant asked if she wanted to try. He pulled the vehicle off onto an empty road and started kissing her on the mouth. He grabbed her hands and held both of her wrists with one of his hands. With his free hand, he touched her breasts and her vagina. She screamed and tried to get away. Her brother awoke and appellant then drove them home.

*Living Room Incident*

In October 2008, mother discovered appellant walking out of the living room with the zipper of his shorts down and his hands in his pocket. She was suspicious. She and appellant argued. She took Jane and appellant into the bathroom to discuss it. Jane eventually stated that appellant had been touching her on her "private parts." She told mother that appellant had been threatening her. Appellant admitted he had touched Jane and asked mother for forgiveness. He also stated, "I'm sorry." In describing this incident to police, Jane indicated that appellant approached her in the living room and started to touch her inappropriately on her breasts and vagina.

*Dragged from Bedroom Incident*

One night while she was asleep, appellant came into Jane's room and carried her into his room. She tried to get away. He removed her clothes and tried to put his penis in her "butthole." His penis never did enter her "butthole," but it was touching the outside of it. She ran to the bathroom, locked herself inside and cried. Appellant tried to open the door and told her "Open the friggin' door."

*Miscellaneous Acts*

Jane told police that between the time of the Blazer incident and the living room incident, appellant touched her almost every day. He touched her breasts and left marks on them when he would suck on her breasts. She told them that he had touched her vagina with his mouth. She had seen him put a condom on his penis several times before he tried to put his penis in her vagina. Appellant told her not to tell anyone about these incidents.**[FN4]** Jane did not tell mother about these incidents earlier because appellant threatened her, mother and the family.

> **FN4**. At trial, Jane testified that appellant only "tried" to touch her private parts and that she had lied to the police when she told them that he had actually touched her breasts and vagina. Detective Randall Watkins of the Stanislaus County

Sheriff's Department testified that Jane told him that appellant had touched her private parts.

*Appellant's Statement to Police*

In October 2008 appellant was interrogated by the police and gave a statement to them that was videotaped and audio recorded. The questioning was conducted by Detective Watkins. Also present was Jorge Garcia, a social worker, who provided translation services and also investigated on behalf of Child Protective Services.

During the interview, appellant admitted to inappropriate touching of Jane. He admitted to touching her leg, breasts and vagina. He also admitted to kissing her with an open mouth and putting his mouth on her breasts and her pubic hair. He indicated that these inappropriate touchings had been going on for about six months.

Appellant ultimately wrote a letter of apology to Jane, which was received into evidence. During his interview, and with the use of some still photographs, he demonstrated with his hand as to how he touched her breasts and vagina. He admitted placing his penis on Jane's "butt" while she was clothed eight to 10 times.

People v. Peregrina, 2011 Cal. App. Unpub. LEXIS 2881, 2-5 (Cal. App. 5th Dist. Apr. 19, 2011).

## II.     DISCUSSION

### A.     Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B.     Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

4

1   the AEDPA; thus, it is governed by its provisions.

2        Under AEDPA, an application for a writ of habeas corpus by a person in custody

3   under a judgment of a state court may be granted only for violations of the Constitution

4   or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.

5   7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

6   state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

11  28 U.S.C. § 2254(d).

12        1.   Contrary to or an Unreasonable Application of Federal Law

13       A state court decision is "contrary to" federal law if it "applies a rule that

14  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

15  that are materially indistinguishable from" a Supreme Court case, yet reaches a different

16  result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.

17  "AEDPA does not require state and federal courts to wait for some nearly identical

18  factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

19  even a general standard may be applied in an unreasonable manner" Panetti v.

20  Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).   The

21  "clearly established Federal law" requirement "does not demand more than a 'principle'

22  or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).   For a state

23  decision to be an unreasonable application of clearly established federal law under §

24  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

25  (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

26  71 (2003).  A state court decision will involve an "unreasonable application of" federal

27  law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at

28  409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

1   Court further stresses that "an *unreasonable* application of federal law is different from

2   an *incorrect* application of federal law."  131 S. Ct. 770, 785 (2011), (citing Williams, 529

3   U.S. at 410) (emphasis in original).   "A state court's determination that a claim lacks

4   merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

5   correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541

6   U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

7   have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

8   Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

9   Federal law for a state court to decline to apply a specific legal rule that has not been

10  squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

11  (2009), quoted by Richter, 131 S. Ct. at 786.

12              2.        Review of State Decisions

13       "Where there has been one reasoned state judgment rejecting a federal claim,

14  later unexplained orders upholding that judgment or rejecting the claim rest on the same

15  grounds."  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

16  "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

17  (9th Cir. 2006). Determining whether a state court's decision resulted from an

18  unreasonable legal or factual conclusion, "does not require that there be an opinion from

19  the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

20  "Where a state court's decision is unaccompanied by an explanation, the habeas

21  petitioner's burden still must be met by showing there was no reasonable basis for the

22  state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does

23  not require a state court to give reasons before its decision can be deemed to have been

24  'adjudicated on the merits.'").

25       Richter instructs that whether the state court decision is reasoned and explained,

26  or merely a summary denial, the approach to evaluating unreasonableness under §

27  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

28  or theories supported or, as here, could have supported, the state court's decision; then

1  it must ask whether it is possible fairminded jurists could disagree that those arguments

2  or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

3  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

4  was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves

5  authority to issue the writ in cases where there is no possibility fairminded jurists could

6  disagree that the state court's decision conflicts with this Court's precedents." Id. To put

7  it yet another way:

8
9
10

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

11  Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts

12  are the principal forum for asserting constitutional challenges to state convictions." Id. at

13  787. It follows from this consideration that § 2254(d) "complements the exhaustion

14  requirement and the doctrine of procedural bar to ensure that state proceedings are the

15  central process, not just a preliminary step for later federal habeas proceedings." Id.

16  (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

17              3.    Prejudicial Impact of Constitutional Error

18       The prejudicial impact of any constitutional error is assessed by asking whether

19  the error had "a substantial and injurious effect or influence in determining the jury's

20  verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

21  U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

22  state court recognized the error and reviewed it for harmlessness). Some constitutional

23  errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v.

24  Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

25  (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective

26  assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

27  Strickland prejudice standard is applied and courts do not engage in a separate analysis

28  applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin

1  v. Lamarque, 555 F.3d at 834.

2  **III.    REVIEW OF PETITION**

3      **A.    Claim One: The Jury Panel was not Impartial**

4      Petitioner claims the trial court violated his constitutional right to an impartial jury

5  by not dismissing the jury panel after excusing two prospective jurors for cause.

6  Petitioner argues the excused jurors' comments improperly affected the jury panel. (Pet.,

7  ECF No. 1 at 16-21.)

8          1.    State Court Decision

9      Petitioner presented this claim by way of direct appeal to the California Court of

10  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

11  appellate court and summarily denied in a subsequent petition for review by the

12  California Supreme Court. (See Lodged Docs. 1, 6.) Because the California Supreme

13  Court's opinion is summary in nature, this Court "looks through" that decision and

14  presumes it adopted the reasoning of the California Court of Appeal, the last state court

15  to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3

16  (1991) (establishing, on habeas review, "look through" presumption that higher court

17  agrees with lower court's reasoning where former affirms latter without discussion); see

18  also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts

19  look to last reasoned state court opinion in determining whether state court's rejection of

20  petitioner's claims was contrary to or an unreasonable application of federal law under

21  28 U.S.C. § 2254(d)(1)).

22      In denying Petitioner's claim, the California Court of Appeal explained:

23  **I. Trial Court Did Not Abuse Its Discretion in Denying Motion to
24  Dismiss Jury Panel**

25      After the court read the charges and asked the prospective jurors
whether any felt they would be unable to give appellant a fair trial because
26  of the nature of the charges against him, several of the prospective jurors
reacted to the question. Prospective Juror T. indicated that her daughter
27  was molested and stated, "I can't do this." The court then excused her.
Prospective Juror R. stated, "I just—I—I don't know what to say. I just
28  can't." After some additional comments from the court, Prospective Juror
R. asked, "Is there more than one person that is accusing him?" And then

following some brief comments by the court, Prospective Juror R. stated, "I don't know what to say. I just—I just—I can't hardly bear to be hear [sic] for that; so I don't know." There was a brief exchange between the court and Prospective Juror R. after which the court asked, "So you're saying you can't be fair to [appellant]? Is that what you're saying?" Prospective Juror R. replied, "He's probably guilty, but—"

Prospective Juror S. indicated there was a history of molestation in his family, that he had been a psychotherapist in the past and "I'm very passionate and biased." The court inquired of Prospective Juror S., "And so you're saying that regardless of the testimony, you can't be fair to [appellant]?" Prospective Juror S. stated, "No, I can't." When the court inquired further, Prospective Juror S. stated, "I've seen the wreckage in these people's lives. And I've seen the wreckage, how it continues to—and how it continues to destroy."

At the next recess, after all of the prospective jurors had left the courtroom, the court indicated that it was going to excuse both Prospective Jurors R. and S., to which defense counsel indicated that the jurors' comments "poisoned the panel. I ask for a new panel." The deputy district attorney disagreed with the request to dismiss the panel. Defense counsel then specifically addressed Prospective Juror S. by saying, "We haven't gotten to occupations, but his language—he has presented himself as an expert to the jurors and made statements, and that's why I believe he more so than [Prospective Juror R.] has poisoned the panel." The court denied the request to dismiss the panel, explaining, "Well, I disagree with you. You know, I don't think it's news to any of these prospective jurors that families that are exposed to this type of conduct can be harmed and harmed for a long time; so I think they were just stating what's commonly known. So I'm not going to excuse the panel. We're going to resume at 1:30 with the same panel, but I will excuse [Prospective Jurors R. and S.] at that time."

Appellant contends that the trial court abused its discretion in denying his motion to dismiss the panel primarily because of the comments of Prospective Juror S. We review the court's denial of a motion to dismiss the jury panel for abuse of discretion. (<u>People v. Nguyen</u> (1994) 23 Cal.App.4th 32, 40-42.)

Appellant relies on <u>Mach v. Stewart</u> (9th Cir. 1998) 137 F.3d 630 (<u>Mach</u>) as supporting his position that the comments of Prospective Juror S. were sufficient to require dismissal of the jury panel.**[FN5]** Mach was charged with sexual conduct with a minor under 14 years of age. The victim was an eight-year-old girl who claimed that while she was at Mach's home visiting his daughter, he had performed an act of oral sex on her. In <u>Mach</u>, the court summarized the relevant voir dire as follows:

"The first prospective juror to be questioned during voir dire was Ms. Bodkin, a social worker with the State of Arizona Child Protective Services. Bodkin stated that she would have a difficult time being impartial given her line of work, and that sexual assault had been confirmed in every case in which one of her clients reported such an assault. The court continued to question Bodkin on this subject before the entire venire panel. The judge's questions elicited at least three more statements from Bodkin that she had never, in

three years in her position, become aware of a case in which a child had lied about being sexually assaulted. The court warned Bodkin and the venire panel as a whole that 'the reason we have trials is to determine whether or not a person is guilty of the charges made against him, and you do that by seeing what the state has to give you by way of evidence and you apply that to whatever you find to be the facts. You listen to the arguments of counsel.' The judge went on to ask Bodkin whether she thought she could do that, to which she responded that she would try, and that she 'probably' could." (Mach, supra, 137 F.3d at pp. 631-632.)

Upon further questioning, Ms. Bodkin indicated she had taken psychology courses and worked extensively with psychologists and psychiatrists and had taken courses in child psychology. Mach's conviction was affirmed by the Arizona Court of Appeals. The Arizona Supreme Court denied review. A writ of habeas corpus was denied by the district court, but the court of appeals reversed, concluding that the court's failure to grant a mistrial or conduct further voir dire to determine whether the panel had in fact been infected by Ms. Bodkin's statements rises to the level of "structural error." (Mach, supra, 137 F.3d at p. 633.)

**FN5**. Appellant makes minor mention of Prospective Juror R.'s comment that he's "probably guilty" and also refers to comments made by Prospective Juror L. ("no doubt that [appellant] is guilty, sir"). Prospective Juror L.'s comments occurred after appellant's motion to dismiss the jury panel was denied. Also, the court immediately admonished the jury panel after Prospective Juror L.'s comments to disregard those comments.

This court is not bound by the federal court's opinion in Mach and we express no opinion in agreement or disagreement with its opinion and decision. We do think that the facts in Mach are distinguishable from those here. Appellant argues that Prospective Juror S. was more experienced than Ms. Bodkin and therefore his opinions were more prejudicial than those of Ms. Bodkin. We disagree. Prospective Juror S. indicated that he had been a psychotherapist "in the past" and had seen the wreckage in people's lives. Ms. Bodkin, on the other hand, stated several times that she had never in three years of social work with the Arizona Child Protective Services become aware of a case in which a child had lied about being sexually assaulted. She addressed the credibility of witnesses, whereas Prospective Juror S. addressed the issue of how the subject matter causes wreckage in people's lives. As the trial court here observed, it is commonly known that families exposed to this type of conduct can be harmed for a long time. Unlike Ms. Bodkin in the Mach case, Prospective Juror S. did not make any comments about whether appellant was guilty or not or whether he would believe or disbelieve appellant or Jane.

The court's order denying the request for dismissal of the jury panel was well within the discretion of the trial court.

People v. Peregrina, 2011 Cal. App. Unpub. LEXIS 2881 at 5-11.

///

1     2. Analysis

2    The right to a jury trial established by the Sixth Amendment "guarantees to the

3 criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd,

4 366 U.S. 717, 722 (1961). A defendant is denied the right to an impartial jury if "only one

5 juror is unduly biased or prejudiced." Mach v. Stewart, 137 F.3d 630, 633 (9th Cir. 1998)

6 (citation omitted). Due process requires "a jury capable and willing to decide the case

7 solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial

8 occurrences and to determine the effect of such occurrences when they happen." Smith

9 v. Phillips, 455 U.S. 209, 217 (1982). In assessing a case of jury bias, "the appropriate

10 focus" is "on the nature of the [extrinsic] information." Jeffries v. Wood, 114 F.3d 1484,

11 1490 (9th Cir. 1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320

12 (1997).

13    Constitutional errors, such as denial of the right to an impartial jury, fall into one

14 of two categories--trial errors or structural errors. See Brecht v. Abrahamson, 507 U.S.

15 at 629. A trial error "occurs during the presentation of the case to the jury" and can "be

16 quantitatively assessed in the context of other evidence presented in order to determine

17 the effect it had on the trial." Id. (brackets omitted). A structural error, by contrast,

18 relates to trial mechanism and "infect[s] the entire trial process." Id. at 629-30; see also

19 Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991). Thus, if constitutional error is

20 found, the error may be harmless if it is not structural. See Hedgpeth v. Pulido, 129 S.

21 Ct. 530, 532 (2008). Under the harmless error standard, relief is warranted on collateral

22 review if the error "had substantial and injurious effect or influence in determining the

23 jury's verdict." Brecht, 507 U.S. at 623 (quoting Kotteakos v. United States, 328 U.S.

24 750, 776 (1946)). Whether a jury's exposure during voir dire to a prejudicial statement

25 constitutes trial error or structural error appears to depend on "the nature of the

26 information and its connection to the case." Mach, 137 F.3d at 634 (citations omitted).

27    Petitioner relies on Mach v. Stewart, in which the Ninth Circuit observed, without

28 deciding, that such a statement "arguably rises to the level of structural error." Id. at

1  633. Mach was convicted of sexual conduct with a minor based primarily on the child's

2  testimony. Id. at 634. During voir dire, an experienced social worker who had taken

3  courses in child psychology made "four separate statements that she had never been

4  involved in a case in which a child accused an adult of sexual abuse where that child's

5  statements had not been borne out." Id. at 632-33. The trial judge warned the jurors that

6  the determination of guilt or innocence could only be based on the evidence, dismissed

7  the prospective juror for cause, and denied a mistrial. Id. The Ninth Circuit reversed the

8  conviction. It viewed the error as structural given that the prejudicial statements

9  "occurred before the trial had begun, resulted in the swearing in of a tainted jury, and

10 severely infected the process from the very beginning." Id. at 633. It then concluded that

11 "[t]he result of the trial . . . was principally dependant [sic] on whether the jury chose to

12 believe the child or the defendant," that "[t]he extrinsic evidence was highly

13 inflammatory and directly connected to Mach's guilt," and that reversal was warranted

14 even under the harmless error standard. Id. at 634.

15     Even if the trial court erred in denying a mistrial in the instant case, the Court

16 concludes that it is objectively reasonable to characterize the error as harmless trial

17 error. In this case, rather than give specific information regarding his occupation and

18 training, prospective Juror S. provided a vague statement that he had been a

19 psychotherapist "in the past." Petitioner argues that the prospective juror was more

20 educated than the prospective juror in Mach. While ostensibly true, the juror provided no

21 further description of his occupation and training, including whether he a licensed

22 therapist, or just informally acted as a psychotherapist.

23     Further, as the state court also reasoned, the fact that the prospective juror

24 believed that sexual abuse caused harm to the families involved is a fact that would be

25 commonly known or easily surmised by any reasonable juror. The Court in Mach

26 focused on the fact that the juror provided significantly detailed information regarding

27 the veracity of the truthfulness of the statements of child victims which the other jurors

28 may have relied upon in determining the credibility of the testimony provided during trial.

In contrast, Juror S. provided no such statements, and did not explain that his knowledge of harm to victims and families was based on any education, training, or occupational experience. The prospective juror's comments were brief, and provided little detail for other jurors to rely upon.

Accordingly, there is no direct connection, as there was in <u>Mach</u>, between the prejudicial statement and Petitioner's guilt in the instant case. As in <u>Thompson</u>, "[t]he case is analogous to where a witness says something that was not supposed to be before the jury, the judge admonishes the jury to disregard it, and there is no reason to doubt that the jury obeyed the admonition." <u>Thompson v. Borg</u>, 74 F.3d 1571, 1576 (9th Cir. 1996). The state court's denial of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law. Petitioner is not entitled to relief with regard to this claim.

### B. Claim Two: Impeachment Evidence of an Eye Witness

In his second claim, Petitioner claims the trial court had a sua sponte duty to instruct on the lesser-included offenses of attempted forcible sodomy, attempted forcible oral copulation and on non-forcible sodomy and non-forcible oral copulation. (Pet. at 21-25.)

#### 1. State Decision

In the last reasoned decision denying Petitioner's claim, the appellate court explained:

**Trial Court Did Not Commit Prejudicial Error in Failing to Instruct on Nonforcible Sex Offenses or Attempted Offenses**

Count I charged appellant with aggravated sexual assault of a child, in violation of section 269, subdivision (a)(1). The jury was instructed that in order to obtain a conviction, the People must prove (1) that appellant committed sodomy or oral copulation; (2) when he acted, the victim was under the age of 14 years and was at least seven years younger than appellant (which was not disputed); and (3) the sodomy or oral copulation was accomplished by force, violence, duress, menace or fear, or by threat of retaliation against the victim or any other person. Sodomy was defined as any penetration, no matter how slight, of the anus of one person by the penis of another person. Oral copulation was defined as any contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person and that penetration was not required. The

court also instructed the jury on one lesser included offense to aggravated sexual assault, namely, simple assault. Both trial counsel agreed to the order and content of the jury instructions without objection.

Appellant complains that the trial court had a sua sponte duty to instruct on the lesser included offenses of attempted forcible sodomy, attempted forcible oral copulation and on nonforcible sodomy and nonforcible oral copulation. The People do not deny that the nonforcible sex offenses or the attempted offenses are lesser included offenses to aggravated sexual assault, but argue there was no evidence to support instructions for those offenses and that, even if there was, the failure to instruct was harmless.

A trial court is under a sua sponte duty to instruct fully on all lesser necessarily included offenses that are supported by the evidence. A lesser offense is necessarily included in the greater offense if either the statutory elements of the greater offense or the facts actually alleged in the accusatory pleading, include all elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. (People v. Breverman (1998) 19 Cal.4th 142, 148-149, 154, fn. 5.) This duty to instruct on a lesser included offense exists even when as a matter of trial tactics a defendant not only fails to request the instruction, but expressly objects to its being given. (Id. at pp. 154-155.) This rule seeks the most accurate possible judgment by ensuring that the jury will consider the full range of possible verdicts, regardless of the parties' wishes or tactics. (Id. at p. 155.) While the court is not obliged to instruct on theories that lack substantial evidentiary support, the trial court errs if it fails to instruct sua sponte on all theories of a lesser included offense which find substantial support in the evidence. The existence of any evidence will not justify instructions on a lesser included offense. The evidence must be such that it is substantial enough to merit consideration by the jury. It is evidence from which a jury composed of reasonable persons could conclude that the lesser offense but not the greater was committed. (Id. at p. 162.)

If a court errs in failing to instruct sua sponte on a lesser included offense in a noncapital case, the judgment is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome. (People v. Breverman, supra, 19 Cal.4th at p. 165, citing Cal. Const., art. VI, § 13; People v. Watson (1956) 46 Cal.2d 818, 836.) Appellate review under Watson focuses not on what a reasonable jury could do, but what such a jury is likely to have done in the absence of the error. The appellate court may consider, among other things, whether the evidence supporting the existing judgment is so relatively strong and the evidence supporting a different outcome so comparatively weak that there is no reasonable probability the error complained of affected the result. (People v. Breverman, supra, at pp. 177-178.)

Appellant argues that the evidence was in conflict as to whether a completed act of sodomy and/or a completed act of oral copulation occurred. Appellant cites Jane's trial testimony that his penis was on her "butthole" and her statement to the police detective that he tried to put his penis in her "butt." The detective related that she described it as touching the outside of her "butthole." Based on this testimony, appellant contends that the evidence reasonably supported attempted sodomy, but not

necessarily completed sodomy. As to oral copulation, Jane testified and told the police that appellant orally copulated her vagina, but appellant told police that he put his mouth on her pubic hair and not on her vagina. Based on this conflicting evidence, appellant asserts that the court was under a sua sponte duty to instruct on attempted forcible oral copulation.

Finally, as to the issue of whether force was used, appellant references Jane's trial testimony that she had sexual feelings for appellant and told him she wanted him to touch her.

First, we reject appellant's argument that Jane's account of him putting his penis on the outside of her "butthole" at most constitutes attempted sodomy. According to Detective Watkins, Jane told him that appellant tried to put his penis in her "butt," explaining that his penis never entered her "butthole," but touched the outside of it. Appellant contends that such evidence supported an attempted sodomy, but not necessarily a completed sodomy, which requires "penetration." (§ 286, subd. (a).) The statute, however, recognizes that even slight penetration is sufficient to complete the crime of sodomy. (§ 286, subd. (a) ["Any sexual penetration, however slight, is sufficient ...."]; People v. Farnam (2002) 28 Cal.4th 107, 143; People v. Ribera (2005) 133 Cal.App.4th 81, 85 ["pok[ing]" penis into victim's behind is sodomy even where victim is wearing underwear].) The touching of the outside of Jane's "butthole" satisfies the penetration requirement of section 286, subdivision (a).

Second, we find it unnecessary to decide whether the trial court erred in failing to give lesser included instructions on nonforcible sodomy, nonforcible oral copulation or attempted forcible sodomy and attempted forcible oral copulation, because any such error was harmless. We conclude that after an examination of the entire cause, including the evidence, it does not appear reasonably probable appellant would have obtained a more favorable outcome had the lesser included offenses instructions been given. (People v. Breverman, supra, 19 Cal 4th at pp. 177-178.)

The evidence against appellant was compelling. Jane's accounts of appellant's conduct, which consisted of her prior statement to the police and social worker as well as her trial testimony, provided ample evidence that she had been the victim of aggravated sexual assault by appellant, including multiple completed acts of sodomy and oral copulation by force or threat. Had the prosecution's case relied entirely on Jane's testimony, it would be difficult to conclude that the failure to give lesser included instructions was harmless under the Watson standard. However, the prosecution's evidence also included strong corroborating evidence supplied by mother and by appellant himself. Mother told police that she had been suspicious for about two months and that when she saw appellant's zipper down and his hands in his pockets in the living room, she confronted him. The two of them and Jane went into the bathroom to talk. At that time, appellant admitted he had touched Jane and was sorry. Jane told mother she had not told her sooner because appellant had threatened her. In appellant's interview with the police, he admitted having touched Jane's breasts and vagina between eight to 10 times. He admitted putting his mouth on her pubic hair. He sobbed during the interview. He wrote an apology letter to Jane. He demonstrated during the interview how he touched her breasts and vagina. He told the police that when he was in the bathroom with Jane and mother, he told them that he

15

1    did not know why he had done it and that the devil must have made him
     do it. Although appellant denied any wrongdoing at trial and there was
2    recantation by mother and Jane in some respects as to what they had
     previously told the police, the aggregate evidence painted a clear and
3    convincing picture of multiple aggravated sexual acts that appellant
     committed on Jane during the relevant time period.

4         Thus, assuming without deciding that it was error for the trial court
     not to have given the additional instructions on attempted offenses and
5    sodomy and oral copulation without force, any error was harmless.

6    People v. Peregrina, 2011 Cal. App. Unpub. LEXIS 2881 at 11-19.

7              2.    Analysis

8         Respondent argues that the failure of a state trial court to instruct on lesser

9    included offenses in a non-capital case does not present a federal constitutional

10   question. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (quoting Windham v.

11   Merkle, 163 F.3d 1092, 1105-06 (9th Cir. 1998)). However, "the defendant's right to

12   adequate jury instructions on his or her theory of the case might, in some cases,

13   constitute an exception to the general rule." Solis, 219 F.3d at 929 (citing Bashor v.

14   Risley, 730 F.2d at 1240). Solis suggests that there must be substantial evidence to

15   warrant the instruction on the lesser included offense. 219 F.3d 929-30 (no duty to

16   instruct on voluntary manslaughter as lesser included offense to murder because

17   evidence presented at trial precluded a heat of passion or imperfect self-defense

18   instruction; no duty to instruct on involuntary manslaughter because evidence presented

19   at trial implied malice). Furthermore, a habeas petitioner is not entitled to relief unless

20   the instructional error "'had substantial and injurious effect or influence in determining the

21   jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619 at 637. In other words, state

22   prisoners seeking federal habeas relief may obtain plenary review of constitutional

23   claims of trial error, but are not entitled to habeas relief unless the error resulted in

24   "actual prejudice." Id.

25        In Petitioner's case, the evidence was not substantial to warrant the instruction on

26   the lesser included offense under the Ninth Circuit's decision in Solis. Under Supreme

27   Court precedent, due process does not require that an instruction be given unless the

28   evidence supports it. See Hopper v. Evans, 456 U.S. 605, 611 (1982); Menendez v.

1   Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005). As discussed by the state appellate court,

2   the evidence presented at trial that Petitioner committed the acts of sexual abuse was

3   compelling. The victim provided several accounts that Petitioner engaged in multiple acts

4   of sodomy and oral copulation. Moreover, evidence based on the testimony of the

5   victim's mother and Petitioner's incriminating statements create consistent and

6   corroborating evidence that he engaged in several acts of sodomy and oral copulation

7   with the victim.

8       Furthermore, even if we assume the trial court erred, Petitioner cannot show

9   actual prejudice. See Brecht, 507 U.S. at 637. Contrary to Petitioner's assertion that

10  there was a dearth of evidence that Petitioner did anything more than attempt to commit

11  the sexual acts, there was overwhelming evidence presented at trial which indicated

12  multiple acts of sexual abuse. In light of the minimal requirements of penetration required

13  to be found guilty of the charged acts, it cannot be said that a failure to give an

14  instruction on nonforcible sodomy, nonforcible oral copulation or attempted forcible

15  sodomy and attempted forcible oral copulation had a "substantial and injurious effect or

16  influence" on the jury's verdict. Brecht, 507 U.S. at 637. Accordingly, the Court is not

17  convinced that the trial court committed an instructional error such that the resulting

18  conviction violated due process. See Estelle, 502 U.S. at 72. It is recommended that

19  Petitioner's second claim for relief be denied.

20          **C.   Claim Three: Ineffective Assistance Of Counsel**

21      In his third claim, Petitioner claims that his trial counsel was ineffective because

22  counsel failed to challenge Count I in the information. He argues that Count I's

23  allegations did not meet the unanimity requirement because sodomy and oral copulation

24  are two distinct acts, and that these acts cannot be charged in a single accusation. (Pet.

25  at 72-83.)

26              1.   State Decision

27      In the last reasoned decision denying Petitioner's claim, the Stanislaus County

28  Superior Court explained:

Petitioner Gustavo Peregrina challenges his September 8, 2009, sentence on the grounds that he received ineffective assistance from trial and appellate counsel. Specifically, Petitioner contends his attorneys failed to challenge Count I on the grounds that the "unanimity" requirement was not met. He also alleges that these two distinct acts, sodomy and oral copulation, cannot be legally charged in a single accusation. He claims his trial counsel provided ineffective assistance of counsel for failing to demur to the complaint and/or information, and claims his appellate counsel provided ineffective assistance for failing to raise the issue on appeal. He asserts, in essence, a pleading issue violating his right to notice of the charges. For the reasons set forth below, the Court finds these claims to be without merit and DENIES the Petition.

## A. Right to a Unanimous Verdict

Petitioner was charged with three offenses: 1) aggravated sexual assault on a minor (PC§ 269(a) (1)), 2) continuous sexual abuse of a minor (PC§ 288.5(a)), and 3) sending harmful material to a minor with the intent to seduce (PC§ 288.2(a)). Count I was based on allegations that Petitioner performed acts of sodomy and oral copulation on the victim, and the People presented evidence of both acts at trial. The Court included CALCRIM 3501 (unanimity) in the jury instructions. This instruction provided, in pertinent part:

> The defendant is being charged with Aggravated Sexual Assault in Count I sometime during the period of May 1, 2008, to July 31, 2008.

> The People have presented evidence of more than one act to prove that defendant committed these offenses. You must not find the defendant guilty unless:

> 1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense;

> OR

> 2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged.

The jury returned guilty verdicts on Counts I and II. The jury hung on Count III, and Count II was ultimately reversed on appeal. Petitioner now seeks habeas relief concerning Count I.

Petitioner claims he received ineffective assistance from his trial and appellate counsel because they failed to argue that Count I was alleged in a manner that violates Penal Code § 954 and People v. Jones (1990) 51 Cal.3d 294. In order to prevail on this claim, Petitioner must demonstrate that: 1) counsels' failure to raise this argument fell below the acceptable standard of representation, and 2) there is a reasonable probability that he would have obtained a better outcome at trial or on appeal had this argument been raised. See Strickland v. Washington

18

(1984) 466 U.S. 668, 687-88; People v. Ledesma (1987) 43 Cal.3d 171, 216-17.

Petitioner fails on both counts. His legal argument is without merit, and because of this, raising the argument at trial or on appeal would not have resulted in a better outcome for Petitioner. The crux of Petitioner's argument is that his alleged sodomy and oral copulation constituted two separate offenses that needed to be charged separately or addressed separately in a special jury verdict. This argument is based on a misunderstanding of Penal Code § 954 and the "unanimity" requirement discussed in People v. Jones.

The law regarding "unanimity" is summarized in People v. Russo (2001) 25 Cal.4th 1124, 1132, which explains that:

> In a criminal case, a jury verdict must be unanimous. Additionally, the jury must agree unanimously the defendant is guilty of a specific crime. Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act.

> This requirement of unanimity as to the criminal act is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed. For example, in People v. Diedrich, the defendant was convicted of a single count of bribery, but the evidence showed two discrete bribes. We found the absence of a unanimity instruction reversible error because without it, some of the jurors may have believed the defendant guilty of one of the acts of bribery while other jurors believed him guilty of the other, resulting in no unanimous verdict that he was guilty of any specific bribe. The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done something sufficient to convict on one count. (Internal citations and quotation marks omitted).

> Simply stated, "the prosecution must prove a specific act and the twelve jurors must agree on one specific act." Jones at 309-10.

In light of this authority, the People could have charged Petitioner with two counts of PC § 269(a) (1), one based on oral copulation and one based on sodomy. But the People were also permitted to allege a single count of PC§ 269(a) (1) based on the oral copulation and/or sodomy. The People chose the second option.

Petitioner claims there is no evidence the unanimity requirement was met, explaining that "no jury could have reliably or unanimously agree upon which act was committed in Count I without a special verdict form . . . ." Russo makes it clear that Due Process is satisfied so long as the

19

appropriate jury instruction was given. Petitioner concedes that was done here. Absent evidence to the contrary, a jury is presumed to follow the instructions it is given. People v. Avila (2006) 38 Cal.3d 491, 574. It was Petitioner's burden to show the requirement wasn't met.

The Court agrees with Petitioner that a special verdict form *might* have been advantageous to his defense, but that is not the pertinent issue in an ineffective assistance of counsel claim. Petitioner must demonstrate that he was prejudiced by counsels' failure to request a special verdict form or otherwise raise the "unanimity" issue, and to show prejudice, Petitioner must show there is a reasonable probability he would have obtained a better outcome at trial or on appeal if counsel had raised this argument. Petitioner has not met this burden. His sweeping claim that no jury could possibly comply with the unanimity requirement does not constitute evidence that this requirement was not met. The jury was properly instructed concerning the unanimity requirement, and the law creates a rebuttable presumption that this instruction was followed. Petitioner has presented no evidence to rebut this presumption.

**B. Right to Notice of the Charges**

Petitioner alleges that the distinct acts, sodomy and oral copulation, cannot be legally charged in a single accusation. (Petitioner's points and authorities, page II-12.) Petitioner's argument is misguided. The accusation consisting of the Amended Information, in fact, does not mention either crime. Rather, it asserts a violation of Penal Code section 269(a) (1) as follows:

> Gustavo Peregrina is accused by the District Attorney for said County of Stanislaus, State of California, by Information, of the crimes of Count I: Violation of Section 269 (a) (1) of the California Penal Code, felon[y], alleged in said Information to have been committed as follows: Count I: The said Gustavo Peregrina on or about and between May 1, 2008, and July 31, 2008, at and in said County of Stanislaus, State of California, and prior to the filing of the information, did willfully, unlawfully, and feloniously commit an aggravated sexual assault upon and with the body of JANE DOE, a child under 14 years of age and at least 10 years younger than the defendant.

An accused must be "informed of the nature and cause of the accusation." (U.S. Const. Amend. VI.) "Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense." People v. Jones (1990) 51 Cal. 3d 294, 317. This right is protected by providing the defendant with a preliminary hearing where the facts supporting the accusation are presented. Id. It is buttressed by available motions related to the pleadings such as a demurrer, and pretrial discovery procedures to elicit further facts. Id. at 317-318.

Here, petitioner was afforded a preliminary hearing that was conducted on February 2, 2009. Jane Doe testified at that hearing. She provided descriptions of sodomy to her person by the defendant during her testimony at the preliminary hearing. (PX transcript, 14: 14-17.) She provided descriptions of oral copulation to her person by the defendant

1

during her testimony at the preliminary hearing. (PX transcript, 15: 6-12.)

2

        Petitioner has cited no appellate cases, and the court found no

3

cases that require the specific acts of sodomy or oral copulation be alleged in the complaint or information charging a violation of Penal Code section 269(a)(1). Petitioner has cited no appellate cases, and the court

4

found no cases that require the specific acts of sodomy and oral copulation to be set forth in separate counts in the complaint or

5

information charging a violation of Penal Code section 269(a)(1).

6

        Petitioner received adequate notice of the charges. Therefore, his contention that trial counsel should have filed to demurrer to the complaint

7

or information is without merit.

8

The Petition for Writ of Habeas Corpus is DENIED.

9

(Answer, Ex. B.)

10

        2.      <u>Law Applicable to Ineffective Assistance of Counsel Claims</u>

11

        The law governing ineffective assistance of counsel claims is clearly established

12

for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

13

<u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas

14

corpus alleging ineffective assistance of counsel, the Court must consider two factors.

15

<u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>Lowry</u>

16

<u>v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's

17

performance was deficient, requiring a showing that counsel made errors so serious that

18

he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

19

<u>Strickland</u>, 466 U.S. at 687. The petitioner must show that counsel's representation fell

20

below an objective standard of reasonableness, and must identify counsel's alleged acts

21

or omissions that were not the result of reasonable professional judgment considering

22

the circumstances. <u>Id.</u> at 688; <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348

23

(9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court

24

indulges a strong presumption that counsel's conduct falls within the wide range of

25

reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 687; <u>see also</u>, <u>Harrington v.</u>

26

<u>Richter</u>, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

27

        Second, the petitioner must demonstrate that "there is a reasonable probability

28

that, but for counsel's unprofessional errors, the result ... would have been different,"

1    Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so

2    egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 687.

3    The Court must evaluate whether the entire trial was fundamentally unfair or unreliable

4    because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United

5    States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

6         A court need not determine whether counsel's performance was deficient before

7    examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

8    Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any

9    deficiency that does not result in prejudice must necessarily fail. However, there are

10   certain instances which are legally presumed to result in prejudice, e.g., where there has

11   been an actual or constructive denial of the assistance of counsel or where the State has

12   interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659,

13   and n.25 (1984).

14        As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the

15   standard for ineffective assistance of counsel in federal habeas is extremely difficult:

16          The pivotal question is whether the state court's application of the
17     Strickland standard was unreasonable. This is different from asking
       whether defense counsel's performance fell below Strickland's standard.
18     Were that the inquiry, the analysis would be no different than if, for
       example, this Court were adjudicating a Strickland claim on direct review
19     of a criminal conviction in a United States district court. Under AEDPA,
       though, it is a necessary premise that the two questions are different. For
20     purposes of § 2254(d)(1), "an unreasonable application of federal law is
       different from an incorrect application of federal law." Williams, supra, at
21     410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a
       deference and latitude that are not in operation when the case involves
22     review under the Strickland standard itself.

23          A state court's determination that a claim lacks merit precludes
       federal habeas relief so long as "fairminded jurists could disagree" on the
24     correctness of the state court's decision. Yarborough v. Alvarado, 541
       U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this
25     Court has explained, "[E]valuating whether a rule application was
       unreasonable requires considering the rule's specificity. The more general
26     the rule, the more leeway courts have in reaching outcomes in case-by-
       case determinations." Ibid. "[I]t is not an unreasonable application of
27     clearly established Federal law for a state court to decline to apply a
       specific legal rule that has not been squarely established by this Court."
28     Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed.
       2d 251, 261 (2009) (internal quotation marks omitted).

1    Harrington v. Richter, 131 S. Ct. at 785-86.

2         "It bears repeating that even a strong case for relief does not mean the state

3    court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, §

4    2254(d) stops short of imposing a complete bar on federal court relitigation of claims

5    already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus

6    from a federal court, a state prisoner must show that the state court's ruling on the claim

7    being presented in federal court was so lacking in justification that there was an error

8    well understood and comprehended in existing law beyond any possibility for fairminded

9    disagreement." Id. at 786-87.

10        Accordingly, even if Petitioner presents a strong case of ineffective assistance of

11   counsel, this Court may only grant relief if no fair-minded jurist could agree on the

12   correctness of the state court decision.

13                    3.    Analysis

14        Here, providing the state court decision with appropriate deference, fair-minded

15   jurists could disagree whether trial counsel fell below an objective standard of

16   reasonableness, or, alternatively, that Petitioner was prejudiced by counsel's conduct.

17   Fair-minded jurists could disagree on whether it would have been advantageous for

18   counsel to move to have the prosecution proceed on separate counts for sodomy and

19   oral copulation, rather than proceed on one combined count. As the state court found,

20   the count as charged did not violate state law regarding the need for a unanimous

21   decision. Petitioner argues that it was possible that he was prejudiced because some

22   jurors may have found him guilty of sodomy and others of oral copulation. However, the

23   jurors were properly instructed that they could only convict Petitioner if they all agreed

24   which act he committed or if he committed all of the acts. Petitioner has presented no

25   evidence that the jurors did not properly follow the instructions provided. Moreover, the

26   Court agrees with the state court's assessment that trial counsel's actions were

27   reasonable in not objecting to the charged offense. While there may have been some

28   advantage to raising the unanimity argument, there was significant evidence that

1   Petitioner had committed both offenses. Therefore, Petitioner was not prejudiced by trial

2   counsel's failure. Likewise, Petitioner was not prejudiced by appellate counsel's failure to

3   raise this claim on appeal, as Petitioner has not shown that it was likely that such

4   argument would have been successful. Accordingly, the Court cannot find that counsel

5   fell below an objective level of performance. Petitioner is not entitled to habeas corpus

6   relief with regard to this claim.

7       **D.**    **Claim Four: Failure of State Court Judge To Recuse Himself**

8       In his final claim for relief, Petitioner claims that, under California Penal Code

9   section 859c, Judge Freeland should have recused himself from deciding, on state

10  habeas, the ineffective assistance claims because Judge Freeland presided over

11  Petitioner's trial. Petitioner argues that the state court wrongly decided his motion for

12  reconsideration raising this claim. (Am. Pet. at 39-42.)

13      1.    State Decision

14      In the last reasoned decision, the state court denied this claim, finding:

15          Defendant's argument that Judge Freeland should not have ruled
    on the habeas petition is incorrect. Penal Code section 859c provides that
16  review of a challenged ruling by a judge shall not be made by the same
    judge who made that ruling. That was not the case here. Defendant's
17  petition claimed ineffective assistance of counsel, but did not directly
    challenge the ruling of the trial court. Therefore, the provisions of Section
18  859c do not come into play.

19          With regard to the remainder of Defendant's challenge to the ruling
    on habeas, this court has reviewed both Defendant's habeas petition and
20  Judge Freeland's ruling. The court's order dated February 16, 2012,
    correctly decided each of the issue [sic] raised therein.
21
            For the foregoing reasons, the motion for reconsideration is denied.
22
23  (Ex. B, Order on Motion for Reconsideration.)

        2.    Analysis
24
25      Petitioner argues that the judge acted in violation of his authority and should have

26  recused himself under state law. The claim is for an alleged violation of state law, and it

27  is not reviewable by way of a federal habeas corpus petition. See Waddington v.

28  Sarausad, 555 U.S. 179, 192 n.5 (2009) ("[W]e have repeatedly held that 'it is not the

1    province of a federal habeas court to reexamine state-court determinations on state-law

2    questions."); <u>Rivera v. Illinois</u>, 556 U.S. 148, 158 (2009) ("[A] mere error of state law . . .

3    is not a denial of due process") (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 121, n.21 (1982)

4    and <u>Estelle</u>, 502 U.S. at 67, 72-73); <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("[A]

5    state court's interpretation of state law . . . binds a federal court sitting in federal

6    habeas"); <u>Little v. Crawford</u>, 449 F.3d 1075, 1083 (9th Cir. 2006) (quoting <u>Estelle</u>, 502

7    U.S. at 68). A habeas petitioner may not "transform a state-law issue into a federal one"

8    merely by asserting a violation of the federal constitution. Langford v. Day, 110 F.3d

9    1380, 1389 (9th Cir. 1997). In light of these authorities, Petitioner is not entitled to

10    federal habeas relief with regard to his recusal claim.

11    **IV.**    **RECOMMENDATION**

12         Accordingly, it is hereby recommended that the petition for a writ of habeas

13    corpus be DENIED with prejudice.

14         This Findings and Recommendation is submitted to the assigned District Judge,

15    pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after

16    being served with the Findings and Recommendation, any party may file written

17    objections with the Court and serve a copy on all parties. Such a document should be

18    captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply

19    to the objections shall be served and filed within fourteen (14) days after service of the

20    objections. The parties are advised that failure to file objections within the specified time

21    may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153

22    (9th Cir. 1991).

23

24    IT IS SO ORDERED.

25         Dated:    October 9, 2013        /s/ *Michael J. Seng*

26                      UNITED STATES MAGISTRATE JUDGE

27

28